# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**MICHELE WILLIAMS,**

    **Plaintiff,**

v.                                     Case No. 8:08-cv-1625-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is reversed and remanded.

### I.

Plaintiff was sixty years of age at the time of her administrative hearing in July 2006. Plaintiff stands 5', 3" tall.[1] She graduated from high school and has a two-year associate's degree in criminal justice. Her past relevant work was as a secretary, court reporter, and pharmacy delivery driver. Plaintiff protectively applied for disability benefits in July 2003, alleging disability as of February 15, 1998, by reason of post-traumatic stress disorder

---

[1] Plaintiff's weight was listed at 212 pounds in a report from a post-hearing consultative examination. (R. 710).

(PTSD), fibromyalgia, arthritis, problems with her knees, and bursitis in her left shoulder. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing and testified in her own behalf.

In essence, Plaintiff testified that she is unable to work because she gets physically sick at the thought of having to leave her house and go to work. She testified that she suffers from PTSD,[2] anxiety, fibromyalgia, rheumatoid arthritis, osteoarthritis, bursitis in her shoulder, and high frequency hearing loss. By her account, she became disabled from working in February 1998 because she was sick half the time and did not show up for work so she retired. Since that time, she worked part-time as a driver for a pharmacy delivering medication from 1998 until 2003.[3]

Plaintiff lives with her husband and their three cats in a duplex. She is able to dress herself without assistance, but since breaking her right ankle in March 2006, her husband has

---

[2]In a post-hearing psychological consult, Plaintiff reported she has PTSD as a result of being raped in 1965 while in the military. She did not receive counseling at the time, but by her account, she attended a PTSD course at the Tampa Veteran's Administration (VA) Hospital five years ago which she claims made it worse in that she now gets nightmares and is jumpier. (R. 721).

[3]That work involved driving and delivering medication to elderly people in their homes. (R. 135, 740). When she started in 1998, the position was twenty hours per week, but it depended on the number of deliveries she had and where she was going. According to her former employer, the job was only two hours per day and eventually Plaintiff had to cut back to three days per week because of her medical condition. (R. 135). While Plaintiff reports that she had to quit this job because she "became depressed and wouldn't leave the house" (R. 723), her employer relays that Plaintiff continued to be employed as a delivery person until May 2002 when the business was sold (R. 135).

2

to help her in and out of the bath.  She hired a maid service to do the cleaning in her home, but she still does her own laundry.  Her husband mostly does the grocery shopping, and they both do the cooking.  Her hobbies include sewing, embroidery, cross stitch, and playing games on the computer or Xbox.  She watches television "most of the day" while she does her sewing, but she has to get up and move around; she cannot just sit there.  Plaintiff owns an exercise bicycle, but currently can only ride it for five minutes at a time.  She had worked her way up to using it for thirty minutes before breaking her ankle.

Plaintiff has a driver's license.  She can drive for up to fifteen minutes before needing to stop.  When she goes out, she sees her one friend or goes to her sewing club.  However, she does not go out often, especially since breaking her ankle.

Plaintiff testified that she has problems with food where sometimes it will get stuck and make her sick.  She also testified as to sleeping difficulties.  Without medication, she will only sleep up to four hours before waking up and then she will doze off again.  With medication, she can sleep through the night, but then it makes her sleepy the rest of the day.  Her anxiety and PTSD cause her to have restless sleep, concerns of people coming up behind her, and trouble leaving her house.

Plaintiff treats every two to three months at the VA hospital for medical problems as well as mental health.  The VA prescribed a cane for her to use when she had a cartilage tear in her left knee.  She uses it currently because of her ankle.  Plaintiff testified she takes Pantoprazole for acid reflux.  She also takes Rimantadine, Citrulline, Simvastatin, Detolac,

Calcium, Nasacort, and Trazadone. The only side effects she complains of is burning in her nose and her food tasting funny after using the Nasacort spray.

By Plaintiff's account, she can only walk or stand two to five minutes at a time. Prior to her ankle injury, she could walk thirty minutes and stand for ten minutes, although not in one spot. Plaintiff testified that she can sit, but has to move around or fidget a lot. She can lift no more than ten pounds. She feels aches and pains all over. On a scale of one to ten with ten being the worst, Plaintiff estimated her pain level at a six with medication. At the conclusion of the hearing, the ALJ indicated she would send Plaintiff for two post-hearing consultative examinations, one psychiatric and the other internal. (R. 739-50).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of December 1, 2006, the ALJ determined that while Plaintiff has severe impairments related to fibromyalgia and arthritis, she nonetheless had the residual functional capacity to perform a wide range of sedentary exertional work.[4] Upon this finding, the ALJ concluded that Plaintiff could perform her past work. Upon this conclusion, the

---

[4]"Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

Plaintiff was determined to be not disabled. (R. 25-32). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises a single claim on this appeal urging that "that the ALJ mischaracterized or ignored the opinion of the consultative examining physician regarding Plaintiff's need to frequently alternate positions and substituted her own opinion for that of the medical expert opinion." (Doc. 21 at 5). Specifically, Plaintiff urges that the ALJ's findings that Plaintiff can sit for six hours with occasional changes in position and usual

breaks is contrary to the findings of the consultative examiner who found that *Plaintiff must periodically alternate sitting and standing in order to relieve pain or discomfort* and Plaintiff's own testimony that she can sit but has to get up and move around.  Plaintiff contends that the ALJ failed to articulate adequate reasons for discounting the consultative examiner's opinion that sitting and standing are limited to brief intervals with alternating activity, and that, at a minimum, the ALJ should have recontacted Dr. Ijewere to determine if Plaintiff could perform a full range of sedentary work.  Plaintiff contends that she is unable to perform her past relevant work because the jobs of secretary, court reporter, and delivery driver require prolonged periods of sitting.  Plaintiff "posits" that if she needed a sit-stand option she could not perform a wide range of sedentary work either.  If she were unable to perform her past relevant work, testimony from a vocational expert would be necessary.  Plaintiff urges that this matter should be reversed and remanded with directions to the ALJ to accept the consultative examiner's opinion and to further obtain vocational expert testimony as to whether Plaintiff could perform her past relevant work and if not, whether there are other jobs in the local or national economy which Plaintiff could perform.  (Doc. 21 at 5-7).

The Commissioner counters that the ALJ's findings regarding Plaintiff's residual functional capacity ("RFC") are consistent with Dr. Ijewere's opinions and argues that Plaintiff mischaracterizes the consultative examiner's statement regarding Plaintiff's need to alternate positions.  Specifically, whereas Plaintiff asserts that Dr. Ijewere opined that Plaintiff's need to alternate positions was "frequent," the doctor found only a "periodic" need to change positions.  Further, the Commissioner argues that there would only be a need to

recontact a consultative examiner in the event the report is incomplete or inadequate which is not the case here. Moreover, a determination of RFC is a decision reserved for the Commissioner based upon the medical opinions, as well as all the relevant evidence in the case record, and the ALJ's findings that Plaintiff had the RFC to perform a wide range of sedentary work and therefore could perform her past relevant work as a secretary or delivery driver was supported by substantial evidence. (Doc. 22 at 7-12).[5]

In reaching her decision, the ALJ applied the five-step sequential evaluation process dictated by the Regulations. 20 C.F.R. § 404.1520. The decision was reached at the fourth step of the process. At this step, the ALJ must determine whether the claimant is capable of performing her past relevant work. The review at this step involves the assessment of a claimant's RFC and requires consideration of the physical and mental demands of her former work. In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that

---

[5]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. If a claimant can still do the kind of work she has done in the past, then the Regulations require that she be found not disabled. At this stage of the evaluation process, the burden is on the Plaintiff to show that she can no longer perform her past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986). In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain. "The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5 (S.S.A.).

8

with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir.1989) (emphasis in the original); *see also Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986). However, at this step, the burden is still upon the Plaintiff to prove that she cannot do this past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986)).

In essence, Plaintiff here claims that the report from consultative examiner, Dr. Patrick Ijewere, M.D., (R. 708-20), reflects greater limitations in Plaintiff's RFC than credited by the ALJ.[6] Dr. Ijewere opined the following exertional limitations: lifting/carrying ten pounds frequently; standing and/or walking at least two hours in an eight-hour day; must periodically alternate sitting and standing to relieve pain or discomfort; and pushing/pulling limited in upper and lower extremities. In support of his conclusions regarding exertional limitations, Dr. Ijewere noted, "Ms Williams can do all above, however due to fibromyalgia, intensity and duration are limited. Brief interval with alternating activity will be better." (R. 717-18). Plaintiff urges that Dr. Ijewere's opinion dictates the need for a sit/stand option, and the ALJ does not articulate a reason for disregarding Dr. Ijewere's restriction in this regard.

---

[6]The ALJ in her decision repeatedly identifies Dr. Ijewere as Plaintiff's treating internist. However, the record suggests that Dr. Ijewere examined Plaintiff at the request of the state agency on September 13, 2006, following the administrative hearing in this matter. Although the ALJ need not give special deference to the opinion of a one-time examiner, here, the ALJ clearly chose to do so.

9

Upon my review, this decision needs further consideration. A fair reading of this decision reflects that the ALJ relied heavily on the opinions of Dr. Ijewere. Although in error, the ALJ viewed this consultative examiner as a treating doctor and gave his opinion considerable weight. In doing so however, it appears that the ALJ chose to ignore, without explanation, the doctor's limitation for a sit/stand option.[7] Doing so precludes a meaningful review of the decision and constitutes error. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (providing that the ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error). Furthermore, the limitation for a sit/stand option would substantially undermine the ALJ's assessment for a wide range of sedentary work and call for the testimony of a vocational expert. *See Hagins v. Comm'r of Soc. Sec.*, No. 02-3946, 2003 WL 1795699, at *1 (6th Cir. Mar. 26, 2003) ("The need for a sit/stand option generally requires the testimony of a vocational expert because it precludes a wide range of work at any given exertional level.") (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988); *Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495, 499 (6th Cir. 1985)). This is not to suggest that the limitation for a sit/stand option renders Plaintiff

---

[7]Perhaps the ALJ's limitation for "occasional changes in position" was intended to provide for a sit/stand option. If so, for the reasons set forth above, the decision still requires additional consideration. If not, given the weight accorded this doctor's opinion, the parties were entitled to some explanation as to why this limitation was not credited.

10

disabled, but only that the ALJ was here obliged either to explicitly discount this limitation or failing that, employ the assistance of a vocational expert in reaching the vocational decision.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 29th day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record